JOHN B. PAINE & others *vs.* ASSESSORS OF WESTON.

Suffolk.   March 3, 1937. — March 31, 1937.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Tax,* Assessment: nursery stock.   *Real or Personal Property.*

Nursery stock, consisting of transplanted trees, more than two years old, cultivated for purposes of sale, was properly taken into account as an element of value in assessing the real estate to its owners; and it was immaterial that the nursery trees had been grown by and belonged to and could be removed by a lessee of the real estate.

APPEAL, filed in the Supreme Judicial Court for the county of Suffolk on December 31, 1936, from a decision by the Board of Tax Appeals.

*J. A. Plummer,* for the taxpayers.

*W. F. Farr,* for the Board of Assessors.

FIELD, J.   This is an appeal from a decision of the board of tax appeals refusing abatement of a tax assessed on real estate in the town of Weston as of January 1, 1935.   The case was heard by the board on an agreed statement of facts.

The taxpayers on January 1, 1935, were the owners of a certain parcel of real estate which was valued by the assessors at $34,500, divided as follows: "House......$850 Carriage House......150     247.70 acres of land...... 33,500."   The "item '247.70 acres of land $33,500' took into account, as an element in the value of the land, the value of certain nursery stock planted therein."   It was agreed that "if the assessors in assessing said land should have taken into account said nursery stock, this petition shall be dismissed," but that if "they should not have done

so . . . said assessed value shall be reduced by $2,900 and . . . an abatement of the tax in the amount of $71.05 shall be granted."

These facts were agreed: "All of the stock in question was planted in open ground, none in hothouses or in boxes and pots. The bulk of the nursery stock consisted of white and red pine and Norway spruce, and included stock for landscaping and for afforestation purposes. . . . [The] nursery stock, whether for landscaping or afforestation purposes, is planted in a seed bed and allowed to remain there for two years. Stock for afforestation purposes is then transplanted to another bed and remains there until sold. It must be sold when four or five years old and not more than ten or twelve inches high or it loses most of its value. Stock for landscaping purposes is transplanted from the seed bed into rows and at intervals of one, two or three years again transplanted. It may be kept several years longer than stock for afforestation purposes and may be permitted to grow to a much larger size without losing its value. Of the nursery stock on said land on January 1, 1935, between one third and one half had been transplanted during the previous year. All the nursery stock was more than two years old [and] between one foot and five feet in height. . . . all said nursery stock had been placed on the land by a tenant of said land holding under a lease and . . . said tenant had the right during or at the end of the term of his lease to remove any or all of the nursery stock and to sell the same for his own account."

The assessors rightly took into account "as an element in the value of the land" the value of the nursery stock planted therein.

Real estate is assessed to the owner or person in possession thereof. G. L. (Ter. Ed.) c. 59, § 11, as amended by St. 1933, c. 254, § 29. The real estate tax, with certain exceptions not here material, is assessed upon the whole real estate on its value as a unit and not upon the interest therein of the person assessed. *Crocker-McElwain Co.* v. *Assessors of Holyoke,* 296 Mass. 338, 344–345. This is true of leased real estate. *Donovan* v. *Haverhill,* 247 Mass. 69.

*Newton Building Co.* v. *Commissioner of Corporations &
Taxation,* 285 Mass. 471, 473–474. And even when by
agreement anything ordinarily a part of the real estate is
to be treated as personal property between the parties it
remains a part of the real estate for the purpose of taxa-
tion. *Milligan* v. *Drury,* 130 Mass. 428, 430. *McGee* v.
*Salem,* 149 Mass. 238. If, therefore, the nursery stock
here in question was in its nature part of the real estate as-
sessed it was properly taken into account as an element of
value in assessing such real estate to the owners thereof,
even though the nursery stock belonged to the lessee and
could have been removed by him.

G. L. (Ter. Ed.) c. 59, § 3, provides that "Real estate
for the purpose of taxation shall include all land within the
commonwealth and all buildings and other things erected
thereon or affixed thereto." The nursery stock was a part
of the real estate within this definition.

Growing trees permanently located on land — usually
described as standing wood and timber but including grow-
ing shade and ornamental trees — are part of the freehold
until severed therefrom, though by a contract of sale of
such trees they pass to the purchaser as personalty when
severed. *Claflin* v. *Carpenter,* 4 Met. 580, 583. *Nettleton*
v. *Sikes,* 8 Met. 34. *Douglas* v. *Shumway,* 13 Gray, 498,
502. *Fletcher* v. *Livingstone,* 153 Mass. 388, 390. This is
the ordinary rule applicable to things growing on land,
though for some purposes "growing crops, which owe their
annual existence to the cultivation of man, are treated as
chattels even while still annexed to the soil." *Common-
wealth* v. *Galatta,* 228 Mass. 308, 311. See also *Mulligan*
v. *Newton,* 16 Gray, 211, 212; *West Springfield Trust Co.*
v. *Hinckley,* 258 Mass. 157, 163. Compare *Calhoun* v.
*Curtis,* 4 Met. 413, 415. This exception with respect to
growing crops, described as emblements and *fructus indus-
triales,* is limited in scope both historically and in its modern
application. Co. Lit. 55b. II Blackstone Commentaries,
123, 404. Tiffany, Real Property, §§ 257–263, and cases
cited. For the purpose of taxation — apart from the statu-
tory provisions dealing with classified forest lands not here

applicable, G. L. (Ter. Ed.) c. 61 — growing trees permanently located on land are a part of the real estate. See *French* v. *Lyme,* 77 N. H. 63. The statute dealing with classified forest land so recognizes. Whether for the purpose of taxation growing annual cultivated crops are a part of the real estate is a question which, by reason of the assessment date, is not likely to arise. It need not be decided in the present case. See, however, *Calhoun* v. *Curtis,* 4 Met. 413, 415, where it was said that a "growing crop is part of the freehold; and the general rule is, that the right to a growing crop follows the right of soil, unless in special cases, where by contract, or custom, or by special rules of law, one person can claim an interest in the soil of another."

Nursery stock, such as is here in question, resembles in some respects growing trees permanently located, and in other respects growing annual cultivated. crops. Like such crops nursery stock is cultivated and is not intended to remain permanently on the land. The fact that it is transplanted from time to time is some indication that its location is temporary. Such nursery stock, however, is not an annual product of the soil and in character and appearance it is like growing trees in their early stages.

The nature of nursery stock was discussed in *Miller* v. *Baker,* 1 Met. 27. The court in that case, page 33, referred to a statement in *Lee* v. *Risdon,* 7 Taunt. 188, 191, to the effect that "trees in a nursery ground are a part of the freehold until severed," and said "And no doubt this is true as between the heir and executor, and would be so also where the entire property in the land and in the trees growing thereon is united in the same person. But we apprehend, in a case like the present, where the owner of the trees had no permanent interest in the soil, but was, at most, using it for the mere purpose of nourishing and sustaining his trees until the proper period should arrive for their removal, the interest in the trees may be considered as separated from the realty, and they may well be denominated personal chattels, and for the wrongful taking and conversion of them by a stranger, the owner may maintain an action of trespass *de bonis asportatis.*" It is evident

from this case that nursery stock growing on land — like growing trees generally — is a part of the real estate when there is no separation of interests, and that such nursery stock is treated as personal property before severance only because of a constructive severance resulting from agreement, express or implied, between the parties. See also *Maples* v. *Millon*, 31 Conn. 598; *Smith* v. *Price*, 39 Ill. 28; *Price* v. *Brayton*, 19 Iowa, 309; *Adams* v. *Beadle & Slee*, 47 Iowa, 439. Compare *Batterman* v. *Albright*, 122 N. Y. 484. No such constructive severance, however, can be effective to change the nature of nursery stock from real estate to personal property for the purpose of taxation. In that respect a separation of interests in a parcel of land so that, as between the parties, an interest in the nature of personalty is created is not different from a separation into interests, each of which is real estate, or a right therein, and does not take a case out of the general rule that the whole real estate is assessed on its value as a unit. In making an assessment the "assessors were not obliged to inquire into the private contracts between the parties." *Milligan* v. *Drury*, 130 Mass. 428, 430. *Wilson & Co.* v. *Cass County*, 69 Iowa, 147, is in accord with our conclusion that nursery stock before severance is part of the real estate for the purpose of taxation.

Since the nursery stock was a part of the real estate for the purpose of taxation it is unnecessary to decide whether under G. L. (Ter. Ed.) c. 59, § 3, it should be classified as "land" or as "things erected thereon or affixed thereto." The land, buildings and nursery stock, considered together as real estate, constituted one subject of taxation, though for statistical purposes it was required that the assessed value of the real estate as a whole be divided between land and buildings. G. L. (Ter. Ed.) c. 59, §§ 45, 46. See St. 1933, c. 254, §§ 38, 39. *Tremont & Suffolk Mills* v. *Lowell*, 163 Mass. 283, 287. *Hamilton Manuf. Co.* v. *Lowell*, 185 Mass. 114, 117. *Massachusetts General Hospital* v. *Belmont*, 238 Mass. 396, 403. *Cotton* v. *Lexington*, 261 Mass. 169, 174. There was no requirement, however, that nursery stock be valued separately or that any part of the assessed

value of the real estate as a whole be allocated to such nursery stock. Obviously it was proper to treat any value of the real estate attributable to the nursery stock as increasing the value of the land rather than the value of the buildings. The agreed facts show that this method of assessment was followed. It was agreed that the assessed value of the land "took into account, as an element in the value of the land" the value of the nursery stock planted therein. There is, therefore, no merit in the contention of the taxpayers that, contrary to law, the nursery stock was valued separately rather than as increasing the value of the land. No question is presented as to whether the increase in the value of the land attributed by the assessors to the nursery stock planted therein was excessive in amount.

It follows that the abatement was refused rightly and that the petition is to be dismissed.

*So ordered.*